UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED:  ____3/31/2022____

-------------------------------------------------------------------------- :
Richard Sheerin,                                                           :
                                                                          :
                                    Plaintiff,                            :
                                                                          :     **1:18-CV-7952-ALC-SLC**
                              -against-                                   :
                                                                          :     **<u>Opinion and Order</u>**
Tutor Perini Corp. & Tutor Perini Bldg Corp.,                            :
                                                                          :
                                    Defendants/Third-Party                :
                                    Plaintiffs,                           :
-------------------------------------------------------------------------- :
                              -against-                                   :
                                                                          :
Imperial Iron Works, Inc.,                                               :
                                                                          :
                              Third-Party Defendant.                     :
                                                                          :
-------------------------------------------------------------------------- :

**ANDREW L. CARTER, JR., United States District Judge:**

     This diversity action was removed from the Supreme Court of the State of New York, Bronx County. A truck driver for a subcontractor brings state-law claims for violations of workplace safety laws and regulations and common law negligence against a general contractor, alleging that he slipped and fell on grease at a construction site. Defendants/Third-Party Plaintiffs Tutor Perini Corporation and Tutor Perini Building Corporation (together, "Defendants" or "Tutor Perini") move for summary judgment against Plaintiff Richard Sheerin ("Plaintiff" or "Sheerin") and Third-Party Defendant Imperial Ironworks, Inc. ("Imperial"). Imperial moves for summary judgment against Tutor Perini. For the reasons stated herein, Tutor Perini's motion is **GRANTED IN PART** and **DENIED IN PART** and Imperial's motion is **DENIED**.

## I. LOCAL RULE 56.1 STATEMENTS

Unless stated otherwise, the facts are derived from the Parties' Local Civil Rule 56.1 Statements of Undisputed Material Fact, declarations, and exhibits. Where the facts are subject to legitimate dispute, they are construed in favor of the non-moving party. *See Tindall v. Poultney High Sch. Dist.*, 414 F.3d 281, 284 (2d Cir. 2005).

Except for Plaintiff's Rule 56.1 Statement, the Court acknowledges that the parties did not directly controvert the factual allegations made in other 56.1 Statements. Local Civil Rule 56.1 requires that "[e]ach statement by the movant or opponent . . . including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." Local Civ. R. 56.1(d). "The papers opposing a motion for summary judgment shall include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party." Local Civil. R. 56.1(b). "Each numbered paragraph in the statement of material facts . . . will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party." Local Civil R. 56.1(c).

District courts have discretion to disregard unsupported or otherwise improper factual assertions and independently review the record. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73-74 (2d Cir. 2001), *abrogated on other grounds by Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167, 175–77, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009). For purposes of deciding the motions for summary judgment before this Court where  the factual averments in a Rule 56.1 Statement has not been specifically controverted, this Court will proceed as follows: "any fact alleged in defendants' Rule 56.1 statement, supported in fact by the record, and not specifically and expressly contradicted by properly supported allegations in [Plaintiff's Rule 56.1 Statement] will

be deemed admitted by plaintiff" and "any fact alleged in defendants' Rule 56.1 statement, supported in fact by the record, but which is specifically and expressly controverted by facts contained in [Plaintiff's Rule 56.1 Statement] which are supported in the record, will not be deemed admitted by [P]laintiff." *Wojcik v. 42nd St. Dev. Project*, 386 F.Supp.2d 442, 448 (S.D.N.Y. 2005) (footnote omitted). Additionally, this Court "shall not consider those legal conclusions" disguised as undisputed material fact. *Id.* at n.5.

## II. FACTUAL BACKGROUND

This case arises from a construction accident that occurred on July 16, 2015 on City Island Avenue in the Bronx, New York. Plaintiff Richard Sheerin was a teamster, also known as a truck driver, employed by Third-Party Defendant Imperial Iron Works, Inc. ("Imperial"), a subcontractor hired by Tutor Perini, a general contractor, to install a temporary bridge at the worksite location on City Island Avenue and transport materials for use until the completion of the new, permanent bridge. Sheerin's Rule 56.1 Statement, ¶¶ 2-4 ("Pl.'s Stmt."); Tutor Perini's Statement. ¶¶ 6, 58 ("Tutor's Stmt."); Imperial's Statement ¶¶ 1 ("Imp. Stmt.").[1] Imperial contracted with Tutor Perini to build and later disassemble the temporary bridge. Imperial Stmt ¶¶ 1 (citing Ex. I at 23-24). Tutor Perini was solely responsible for building the new bridge. Tutor Stmt. ¶¶ 57. It did not control the means and methods of Imperial workers on the temporary bridge. Tutor Stmt. ¶¶ 61.

Prior to the accident on July 16, 2015, Imperial assigned Sheerin to perform his normal work duties, which included driving his truck[2] throughout the temporary bridge and using its

---

[1] Imp. Stmt. (ECF No. 82); Tutor Stmt. (ECF No. 87); Pl's Stmt. (ECF No. 90-1); Tutor Counterstmt. To Pl.'s Stmt. (ECF No. 99).

[2] Sheerin and Imperial dispute the type of truck that Sheerin drove on the date of the accident. Sheerin testified that he drove a 1998 Western Star model equipped with a crane and Imperial vice president, Nick Ascenzo, testified that he drove a 1999 Western Star flatbed truck that day. Pl.'s Stmt. ¶¶ 23, 36.

crane to load and offload various tools and materials. Pl.'s Stmt ¶¶ 14, 23; Tutor Stmt. ¶¶ 66-67; Imperial Stmt ¶¶ 2. Imperial would provide its own trucks at the worksite. Tutor Stmt. ¶¶ 51. When driving down the temporary bridge to drop off and pick up construction materials, Sheerin would exit the truck at each stop and stand on the bridge structure. Pl.'s Stmt. ¶¶ 15. After the second or third dropping off of materials on the temporary bridge,[3] Sheerin passed by a worker pushing a wheelbarrow as he was returning to the cabin of his truck from the back of the truck. Pl.'s Stmt. ¶¶ 16. After passing the worker with the wheelbarrow, Sheerin opened the cabin door of his truck, stepped onto the first step on the fuel tank with his right foot with his hand on the door handle of the truck door. Pl.'s Stmt. ¶¶ 16; Tutor Stmt. ¶¶ 11. Sheerin does not know the height of his first step onto the truck. Tutor Stmt. ¶¶ 25. His left foot reached the doorjamb, slipping off the top of the doorjamb. He tried hanging onto the truck door after it had swung open, and he fell down face first onto the roadway of the temporary bridge. Pl.'s Stmt ¶¶ 16; Tutor Stmt. ¶¶ 11, 26-27. According to Sheerin, his left foot slipped on the truck doorjamb because there was grease on the bottom of his work boot, which he testified came from the roadway of the temporary bridge. Pl.'s Stmt. ¶¶ 17-19. During his deposition, he testified that he could see grease on the doorjamb after he stood up following his fall. Tutor Stmt. ¶¶ 21. Sheerin testified that he suffered severe injuries as a result of the accident. Pl.'s Stmt. ¶¶ 24. There were no eyewitnesses to the accident. Tutor Stmt. ¶¶ 1, 73; Imp. Stmt. ¶¶ 8.

After his fall, Plaintiff testified that he walked to the part of the roadway of the bridge structure where he passed the worker with the wheelbarrow and observed a "grease tear off," which he said was typically used to insert a grease cartridge into a grease gun, as well as the insert of a grease gun lying on the roadway of the temporary bridge on top of a "blob of grease."

---

[3] Tutor Stmt. ¶¶ 10.

Pl.'s Stmt. ¶¶ 20-21. That day, shortly after his fall, Sheerin took photos of the "blob of grease" on the roadway with his mobile phone. Pl.'s Stmt. ¶ 22; Tutor Stmt. ¶¶ 30. There is a dispute about whether he took them that day. Tutor Stmt. ¶¶ 15. He testified that he threw away his work boots shortly after the date of the accident and never took photos of his work boots or the grease in the doorjamb. Tutor Stmt. ¶¶ 14, 17, 22, 31; Imp. Stmt. ¶¶ 4.

Sheerin testified that he reported the accident to several people. Frank Valentino, employed by Imperial as an ironworker super/foreman on the temporary bridge met Sheerin "a few minutes" after he slipped and fell from the truck; they discussed the accident from approximately 11:30AM to 11:45AM. Pl.'s Stmt. ¶¶ 5-9. Valentino generally gave Sheerin work orders for driving his truck on the temporary bridge and other tasks. Imp. Stmt. ¶¶ 2; Tutor Stmt. ¶¶ 3, 7-8. On the date of the accident, Sheerin said, he also reported the accident to his boss and Imperial vice president, Nick Ascenzo,[4] as well as the officer manager for Imperial. Pl.'s Stmt. ¶¶ 10-12, 35; Imp. Stmt. ¶¶ 9. There is no evidence that Sheerin filed an accident report on the day of the accident. On October 15, 2015, the Workers' Compensation Board received a First Report of Injury regarding the accident from Sheerin. Imperial Stmt. ¶¶ 11.

Joseph Berkowitz, former Tutor Perini project manager on the temporary bridge project,[5] testified that he would try to walk daily on the temporary bridge to look for hazardous conditions, and when he spotted hazards he would generally report them to the project supervisor depending on the nature of the hazard. Pl.'s Stmt. ¶¶ 25-27. He further testified that he did not document hazards on the temporary bridge in paper form, that he would not necessarily report every piece of garbage that he would observe on the temporary bridge to the project supervisor,

---

[4] However, Ascenzo did not recall Sheerin's accident or injury during his deposition and testified that he was "possibly in the office or another project" on July 16, 2015. Pl.'s Stmt. ¶¶ 37; Tutor Stmt. ¶¶ 2, 64, 69; Imp. Stmt. ¶¶ 9.
[5] Berkowitz was Tutor Perini's project manager on this project. Imp. Stmt. ¶¶ 10.

that he would not have reported trash or debris left behind by a worker at the temporary bridge site, and that he would not report certain conditions on top of the bridge to the project supervisor. Pl.'s Stmt. ¶¶ 28-32. Berkowitz stated that he would normally not have reported the black "splash" or "spot" depicted in Sheerin's cell phone photographs and that, upon his examination of the photographs, it seemed that trash had been thrown atop the temporary bridge. Pl.'s Stmt. ¶¶ 33-34. He did testify, however, that if he ever saw grease he would have reported it to the project superintendent, who would try to determine the source of the grease and get it cleaned up. Tutor Stmt. ¶¶ 78. He said that this was the custom and practice of Tutor Perini. Imp. Stmt. ¶¶ 10. Berkowitz also had authority to stop work on the temporary bridge project. Tutor Stmt. ¶¶ 83.

Stephen Markowski, former Tutor Perini estimating manager at the time of the accident,[6] negotiated the subcontract agreement (the "Subcontract Agreement") with Imperial for the temporary bridge project. Tutor Stmt. ¶¶ 33. According to Markowski, Tutor Perini solely self-performed all work on the permanent bridge, and Imperial solely worked on the temporary bridge. Tutor Stmt. ¶¶ 34, 36, 57.

The indemnification provisions under Section 11 of the Subcontract Agreement state in pertinent part:

> 11.1   To the fullest extent permitted by law, Subcontractor [Imperial] shall indemnify, defend, and hold harmless Contractor [Tutor Perini], Owner and their officers, employees, consultants and agents from and against all liability, claims, damages, losses, costs, fines and expenses. (including attorney's fees and disbursements) caused by, arising out of or resulting from the performance of the Work or the acts or omissions of the Subcontractor, its subsubcontractors or anyone directly or indirectly employed by the Subcontractor or any of its sub-subcontractors or for whose acts the Subcontractor or any of its subsubcontractors may be liable; provided that any such liability, claim, damage, loss, cost, or expense is caused, in whole or in part, by the negligent act or omission of the Subcontractor, its sub-subcontractors or anyone directly or indirectly employed by any of them or

---

[6] Imp. Stmt. ¶¶ 10.

for whose acts any of them may be liable when the loss, injury or damages arises out of, relates to, is connected to, or results from the Subcontractor's work. <u>This required Subcontractor indemnity specifically does not include indemnification for the Contractor's own negligence, except to the extent permitted by law.</u> Such obligation shall not be construed to negate or otherwise reduce any other right or obligation or indemnity, which would otherwise exist.

11.2     The obligations of the Subcontractor under this Article 11 shall survive the termination of this Subcontract.

11.3     The Subcontractor agrees that its obligation to defend, indemnify and hold harmless Contractor and other indemnitee(s) pursuant to the provisions of this Subcontract commences <u>when a claim is made even if the Subcontractor disputes its obligation to defend, indemnify and hold harmless.</u> Should the Subcontractor fail to promptly assume its duty to defend such a claim, the Contractor or the indemnitee(s), at its sole option, may provide for that defense through counsel of its own choosing, at Subcontractor's sole expense. <u>Subcontractor agrees to pay all defense costs so incurred by the Contractor or other indemnitee(s) upon demand.</u>

Kenneth Arthur Rigby Declaration, Ex. H (emphasis added); Richard W. Berne Affirmation, Ex. L.

Section 5 of the Subcontractor Agreement regarding insurance coverage provides in relevant

part:

5.1     Prior to starting Subcontract Work, Subcontractor, at its own expense, shall procure and maintain in force on all of its operations, primary insurance coverage in accordance with attached 'Exhibit B.' <u>Subcontractor shall provide the Contractor with a Certificate of Insurance</u> detailing the coverage referenced in 'Exhibit B' within thirty (30) days after signing this agreement or performing work on the site.

5.2     The policies of insurance shall be in such form and shall be issued by such company or companies as may be satisfactory to Contractor. Contractor and such additional persons and entities as may be specified by attached 'Exhibit B' shall be named as additional insureds on said policies, as shall any person or entity which Contractor is required to insure by the Contract Documents, but in any case, such requirements shall not extend to workers compensation insurance. <u>Subcontractor shall maintain such insurance policies as will protect both the Contractor and the Subcontractor for claims for damages because of bodily injury which may arise both out of and during its performance under this agreement or after completion thereof.</u> Before commencing the Subcontract Work, <u>Subcontractor shall furnish Contractor with certificates of insurance from the insuring companies which certificates shall specify the effective dates of the policies, the limits of liability thereunder, and contain a provision that the said insurance will not be canceled except upon sixty (60) days-notice in writing to Contractor.</u> In addition, within

thirty (30) days of starting the Subcontract Work, <u>the Subcontractor will provide the Contractor with a copy of the relevant insurance policies and all relevant blanket or relevant endorsements.</u> Subcontractor shall maintain full and complete insurance on its Subcontract Work until final acceptance of the Prime Contract Subcontractor shall not cancel any policies of insurance required hereunder either before or after completion of the Subcontract Work without written consent of Contractor.

5.3     Subcontractor may use a combination of General Liability Insurance and Excess Liability Insurance provided the sum of these insurances at least equals the amounts listed for the General Liability Insurance. If Excess Liability Insurance is used, "Umbrella Form" must be furnished.

5.4     <u>The carrying of insurance shall not be deemed to release Subcontractor or in any way diminish its liability, by way of indemnity or otherwise, as assumed by it under this Subcontract. Contractor shall furnish, at Subcontractor's request, satisfactory evidence of such insurance as Contractor may be required to obtain pursuant to the Contract Documents.</u>

Rigby Decl., Ex. H (emphasis added); Berne Aff., Ex. L (emphasis added).

Exhibit B of the Subcontractor Agreement, entitled "Insurance Requirements"[7] and referenced in Sections 5.1 and 5.2, requires that Imperial procure primary, noncontributory insurance for its work related to the temporary bridge project. Tutor Stmt. ¶¶ 85-88; Imp. Stmt. ¶¶ 12. Imperial provided certificates of insurance ("COIs") to Tutor Perini indicating that they had obtained primary, contributory coverage. Imp. Stmt. ¶¶ 12; Tutor Stmt. ¶¶ 89. The parties dispute whether the COIs provided by Imperial satisfy the insurance procurement obligations. Imp. Stmt. ¶¶ 12; Tutor Stmt. ¶¶ 89. After Sheerin commenced this action, Tutor Perini communicated with Starr Indemnity & Liability Company ("Starr"), Imperial's insurance carrier, through Starr's third-party administrator, Sedgwick Claims Management Services ("Sedgwick"), about coverage of defense costs for Tutor Perini subject to a reservation of rights regarding contractual indemnification. Imp. Stmt. ¶¶ 13; Tutor Stmt. ¶¶ 90-94. It is disputed whether Imperial procured the agreed-upon insurance coverage. Imp. Stmt. ¶¶ 12-13; Tutor Stmt. ¶¶ 95.

### III. PROCEDURAL HISTORY

---

[7] Rigby Decl., Ex. I.

By Summons and Complaint, Plaintiff commenced this action in the Supreme Court of the State of New York, Bronx County (Index No. 30410/2017E) on November 2, 2017. ECF No. 1-1. The Complaint alleges causes of action for (1) common law negligence, and (2) New York Labor Law §§ 200 and 241(6) against Tutor Perini. *Id.* Imperial was not named as a defendant in the complaint. On August 31, 2018, Defendants removed the action to this Court. ECF No. 1.

Defendants move for summary judgment (1) against Sheerin on all claims and (2) against Imperial on their second and third causes of action for contractual indemnification and breach of contract for failure to procure insurance, respectively. ECF No. 84-88. On August 26, 2021, Sheerin opposed. ECF No. 90.[8] Imperial also opposed. ECF No. 80. Defendants filed replies. ECF Nos. 91-92, 99.

Imperial moves for summary judgment against Defendants on all claims on August 31, 2021. ECF Nos. 82, 93-95. Defendants opposed the motion on September 2, 2021. ECF Nos. 89, 97-98.[9] On the same day, Imperial filed a reply. ECF No. 96.[10]

## IV. STANDARD OF REVIEW

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). An issue is material if it would "affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*,

---

[8] Any claims that Plaintiff failed to defend in his opposition papers are deemed abandoned. "When a party fails adequately to present arguments," including in an opposition brief, courts may "consider those arguments abandoned." *Malik v. City of New York*, 841 F. App'x 281, 284 (2d Cir. 2021) (quoting *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 172 (2d Cir. 2004)). This is especially true "in the case of a counseled party" where "a court may . . . infer from a party's partial opposition that relevant claims and defenses that are not defended have been abandoned." *Id.* (quoting *Jackson v. Fed. Exp.*, 766 F.3d 189, 198 (2d Cir. 2014)).
[9] In this opposition brief, Defendants withdrew their first cause of action for common law indemnification.
[10] The parties seemed to encounter numerous docketing errors when submitting the various motions so the filing dates are not necessarily chronological and often reflect re-submissions of moving papers.

477 U.S. 242, 248 (1986). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* There is no issue of material fact where the facts are irrelevant to the disposition of the matter. *See Chartis Seguros Mexico, S.A. de C.V. v. HLI Rail & Rigging, LLC*, 967 F.Supp.2d 756, 761 (S.D.N.Y. 2013).

In deciding a summary judgment motion, courts must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in her favor. *Beechwood Restorative Care Ctr. V. Leeds,* 436 F.3d 147, 151 (2d Cir. 2006). Courts may not assess credibility, nor may they decide between conflicting versions of events, because those matters are reserved for the jury. *Jeffreys v. City of New York,* 426 F.3d 549, 553–54 (2d Cir. 2005). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff." *Id.* (quoting *Anderson*, 477 U.S. at 252).

"Summary judgment is generally proper in a contract dispute only if the language of the contract is wholly unambiguous." *Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 232 F.3d 153, 157 (2d Cir. 2000). "[T]he court may resolve ambiguity in contractual language as a matter of law if the evidence presented about the parties' intended meaning [is] so one-sided that no reasonable person could decide the contrary." *Id.* at 158 (citations omitted).

"Under New York law, which the parties agree is controlling here, the initial question for the court on a motion for summary judgment with respect to a contract claim is 'whether the contract is unambiguous with respect to the question disputed by the parties.' " *Law Debenture Tr. Co. v. Maverick Tube Corp.*, 595 F.3d 458, 465 (2d Cir. 2010) "It is well settled that [a court's] role in interpreting a contract is to ascertain the intention of the parties at the time they

entered into the contract. If that intent is discernible from the plain meaning of the language of the contract, there is no need to look further." *Evans v. Famous Music Corp.*, 1 N.Y.3d 452, 458, 775 N.Y.S.2d 757, 761, 807 N.E.2d 869, 872 (2004).

"Whether a contract is ambiguous is a question of law for a court to determine as a threshold matter." *World Trade Ctr. Props., L.L.C. v. Hartford Fire Ins. Co.*, 345 F.3d 154, 184 (2d Cir. 2003). "[A]n ambiguity exists where a contract term could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Id.* (citations and internal quotes omitted). "A contract is unambiguous if the language it uses has 'a definite and precise meaning, unattended by danger of misconception in the purport of the [agreement] itself, and concerning which there is no reasonable basis for a difference of opinion.'" *Williams v. Town of Carmel*, 175 A.D.3d 550, 106 N.Y.S.3d 333, 335 (2d Dep't 2019) (quoting *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 780 N.E.2d 166, 170, 750 N.Y.S.2d 565 (2002)). "Language whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation." *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 396 (2d Cir. 2009) (citing *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989)).

## V. ANAYLSIS

This action sits in diversity. The parties agree that New York law governs this case. Accordingly, this Court will apply New York law. *Cf. Hartford Underwriters Ins. Co. v. Hanover Ins. Co.*, 653 Fed.Appx. 66, 67 (2d Cir. 2016) (summary order).

**A. Sheerin Has Adduced Sufficient Evidence to Raise Triable Issues Regarding His N.Y. Labor Law § 241(6) Claim (through N.Y.C.R.R. § 23-1.7(d)) against Tutor Perini**

Labor Law § 241(6) "places the 'ultimate responsibility for safety practices at building construction jobs where such responsibility actually belongs, on the owner and general contractor." *Rizzuto v. L.A. Wenger Contracting Co.*, 91 N.Y.2d 343, 348, 693 N.E.2d 1068, 1070 (1998) (quoting 1969 N.Y. Legis. Ann., 407-08). It states that "owners and contractors must 'provide reasonable and adequate protection and safety' for workers" and must "comply with the specific safety rules and regulations promulgated by the Commissioner of the Department of Labor." *Ross v. Curtis-Palmer Hydro-Elec. Co.*, 81 N.Y.2d 494, 502, 618 N.E.2d 82, 86 (1993) (citations and footnote omitted).[11] The duty of owners and contractors to abide by safety rules and regulations is nondelegable. *See id.*; *Rizzuto v. L.A. Wenger Contracting Co.*, 91 N.Y.2d 343, 348, 693 N.E.2d 1068, 1070 (1998) (citing cases).

Examining the legislative intent of section 241 more generally, the New York Court of Appeals has specifically held that section 241(6) "imposes liability upon a general contractor *for the negligence of a subcontractor*, even in the absence of control or supervision of the worksite." *Rizzuto*, 91 N.Y.2d at 348, 693 N.E.2d at 1070 (emphasis in original) (collecting cases). In *Ross,* the New York Court of Appeals elaborated upon the standard of liability under section 241(6), stating that safety rules or regulations that constitute a "specific, positive command" are absolute compared to those that constitute a "reiteration of common-law standards" and simply parrot a general duty of care. *Id.* at 349 (citing *Ross v. Curtis-Palmer*, 81 N.Y.2d at 618). In short,

_____

[11] Section 241(6) reads:

> All areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein . . . . The commissioner may make rules to carry into effect the provisions of this subdivision, and the owners and contractors and their agents . . . shall comply therewith.

N.Y. Labor Law § 241(6) (McKinney 2002).

"section 241(6) imposes a nondelegable duty upon an owner or general contractor to respond in damages for injuries sustained *due to another party's negligence* in failing to conduct their construction, demolition or excavation operations so as to provide for the reasonable and adequate protection of the persons employed therein. *Id.* at 349-50. "Thus, once it has been alleged that a concrete specification of the Code has been violated, it is for the jury to determine whether the negligence of some party to, or participant in, the construction project caused plaintiff's injury." *Id.* at 350. "If proven, the general contractor (or owner, as the case may be) is vicariously liable without regard to his or her fault." *Id.* (citations omitted).

Plaintiff alleges a violation of Industrial Code regulation Section § 23-1.7(d). Subsection (d) provides:

> Slipping hazards. Employers shall not suffer or permit any employee to use a floor, passageway, walkway, scaffold, platform or other elevated working surface which is in a slippery condition. Ice, snow, water, grease and any other foreign substance which may cause slippery footing shall be removed, sanded or covered to provide safe footing.

N.Y.C.R.R. § 23-1.7(d). Because subsection (d) constitutes a "specific, positive command," it is nondelegable, which means that Plaintiff "need not show that [Tutor Perini] exercise supervision or control over his worksite" to impose liability. *Ross v. Curtis-Palmer Hydro-Elec. Co.*, 81 N.Y.2d 494, 502, 618 N.E.2d 82, 86 (1993).

Upon review of the record, the Court concludes that material factual issues preclude summary judgment on this claim. Deposition testimony from multiple witnesses and documentary evidence—the mobile phone photographs taken by Sheerin—create material factual issues as to (1) whether there was a slippery condition on the temporary bridge, (2) whether the temporary bridge surface constituted a "passageway" or "other elevated working surface," and (3) whether the slippery condition caused Plaintiff to fall from his truck. Here,

Sheerin testified that he stepped in grease on the roadway of the temporary bridge and when entering the cab of his truck he slipped and fell face first/down onto the ground. After standing up, he testified that he saw grease on the doorjamb and observed grease equipment for a grease gun lying on top of a "blob of grease" on the temporary bridge structure. This testimony is somewhat corroborated by Berkowitz, who testified that he would try to check for hazardous conditions at the temporary bridge every day and report them to the project supervisor, depending on the nature of the hazard. He specifically stated that he would not report certain conditions, such as trash and debris, and would not have reported the black "splash" or "spot" depicted in Sheerin's photographs.

Tutor Perini contends that the photographs do not show any grease, that there is contrary testimony in the record, and that Sheerin's testimony is not credible.[12] However, courts "may not assess [the] credibility" of testimony at the summary judgment stage "because those matters are reserved for a jury." *Jeffreys*, 426 F.3d at 553-54. In addition, "weighing the evidence is a task within the jury's function." *Brisboy v. Fibreboard Corp.*, 429 Mich. 540, 550, 418 N.W.2d 650, 654 (1988) (quoting *Caldwell v. Fox*, 394 Mich. 401, 231 N.W.2d 46 (1975). Viewing the evidence in the light most favorable to Plaintiff and drawing all reasonable inferences in his favor, a jury could also find that this slippery condition proximately caused Sheerin's fall. *Wallace v. Nat'l R.R. Passenger Corp.*, 5 F.Supp.3d 452, 469 (S.D.N.Y. 2014) (quoting *Mack v. Altmans Stage Lighting Co.,* 98 A.D.2d 468, 470, 470 N.Y.S.2d 664 (2d Dep't 1984)).[13]

---

[12] Tutor Perini also argues that the slippery condition was not in a "passageway," as required by subsection (d). But Sheerin testified that the accident occurred on the roadway of the temporary bridge, which was a narrow, confined space. Even if Defendants find his testimony noncredible and exceedingly weak, it suffices to create a factual issue about whether the working area was sufficiently open.

[13] Imperial argues that Plaintiff proffers no proof that it was liable for his injuries and that the Complaint fails to allege that Imperial participated in any negligent act. Upon close examination of the Complaint and the record in this case, the Court concludes that Plaintiff has not asserted any claim against Imperial or otherwise sought leave to amend to do so, and this Circuit strongly disfavors the unilateral assertion of new claims in opposition to summary

**B. Sheerin Has Adduced Sufficient Evidence to Raise Triable Issues Regarding His N.Y. Labor Law § 200 / Common Law Negligence Claim against Tutor Perini**

"Labor Law § 200 codifies landowners' and general contractors' common law duty to maintain a safe workplace." *Wojcik v. 42nd St. Dev. Project*, 386 F. Supp. 2d 442, 455 (S.D.N.Y. 2005); *Rizzuto v. Wenger Contracting Co.*, 91 N.Y.2d 343, 352, 670 N.Y.S.2d 816, 693 N.E.2d 1068 (1998). Courts generally analyze section 200 and common law negligence simultaneously. *Wojcik v. 42nd St. Dev. Project*, 386 F. Supp. 2d 442, 455 n.15 (S.D.N.Y. 2005). Section 200 stipulates in relevant part:

> All places to which this chapter applies shall be so constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein or lawfully frequenting such places. All machinery, equipment, and devices in such places shall be so placed, operated, guarded, and lighted as to provide reasonable and adequate protection to all such persons. The board may make rules to carry into effect the provisions of this section.

N.Y. Lab. Law § 200(1) (McKinney).

---

judgment. This Court declines to adjudicate the merits of a claim that he has not raised in this case. "A claim must be set forth in the pleadings, in order to give defendants fair notice of the nature of the plaintiff's claim." *Thomas v. Egan*, 1 Fed.Appx. 52, 54 (2d Cir. 2001) (summary order) (citations omitted).

Because Imperial was his employer, the potential claim would arise out of the events and occurrences surrounding the July 16, 2015 slip-and-fall accident at the temporary bridge worksite. Those events took place more than two years before Plaintiff commenced this action in state court. The Complaint does not name Imperial as a defendant in the case or attribute any misconduct to Imperial. It merely alleges that Imperial hired Sheerin on or before July 16, 2015 (Compl. ¶¶ 4), and that Defendants hired "sub-contractors" to perform work on the construction site (*see id.* ¶¶ 30, 31). Plaintiff was also aware that Defendants brought a third-party complaint against Imperial for indemnification and breach of contract for failure to procure insurance, which was filed on ECF on January 27, 2020. ECF No. 19. Over six years after the date of the accident, over four years since filing the initial state court complaint, over two years since Imperial became Third-Party Defendant in this case, and following the close of discovery, Plaintiff did not take the opportunity to seek leave to amend to assert a claim against Imperial. Rule 14(a)(3) permits a plaintiff to bring claims against third-party defendants. *See* Fed. R. Civ. P. 14(a)(3) ("The plaintiff may assert against the third-party defendant any claim arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff.").

To the extent that Plaintiff is attempting to state a claim against Imperial, no explanation has been provided for this inordinate delay in seeking leave to amend without a motion. "A party may not use his or her opposition to a dispositive motion as a means to amend the complaint." *Shah v. Helen Hayes Hosp.*, 252 Fed.Appx. 364, 366 (2d Cir. 2007) (summary order); *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998); *see also Brandon v. City of New York*, 705 F.Supp.2d 261, 278 (S.D.N.Y. 2010) (citing cases) ("It is black letter law that a party may not raise new claims for the first time in opposition to summary judgment.").

Under Labor Law § 200, courts distinguish between "manner" cases, where supervisory control must be proven, and "premises" cases, where notice is sufficient. *Wallace v. Nat'l R.R. Passenger Corp.*, 5 F.Supp.3d 452, 466-67 (S.D.N.Y. Mar. 18, 2014) (citing cases). "Manner" cases require sufficient evidence that the defendant "exercised some supervisory control over the operation." *Ross,* 81 N.Y.2d at 505, 601 N.Y.S.2d 49, 618 N.E.2d 82. "Where a claim under section 200 'arises out of alleged defects or dangers arising from a *subcontractor's methods* or materials, recovery against the owner or general contractor cannot be had unless it is shown that the party to be charged exercised some supervisory control over *the operation*.'" *Palen v. ITW Mortgage Investments III, Inc.,* 2003 WL 1907980, at *5–6 (S.D.N.Y. Apr.17, 2003). In other words, Tutor Perini must "exercise supervisory control over the means or methods employed by [Imperial] to accomplish a task." *Wojcik v. 42nd St. Dev. Project*, 386 F.Supp.2d 442, 457 (S.D.N.Y. Aug. 26, 2005). But where a claim under section 200 arises from a defective condition on the premises, "notice of a dangerous condition is sufficient." *Wallace*, 5 F.Supp.3d at 467 (citing cases). Notice refers to the creation of, or actual or constructive notice of, the defective or dangerous condition on the premises. *Wynne v. B. Anthony Const. Corp.*, 53 A.D.3d 654, 862 N.Y.S.2d 379 (2d Dep't 2008).

Defendants argue that there is no proof that they had actual or constructive notice of a defective condition on the premises—the grease on the temporary bridge surface—or that they exercised supervisory control over the manner of Sheerin's work. Plaintiff seems to overlook that "manner" and "premises" cases apply different legal standards. Nonetheless, based on an independent review of the record, the Court concludes that there is at least sufficient evidence to prove at trial that Tutor Perini had constructive notice of the slippery condition on the premises. The record, however, cannot sustain a claim based on the methods and manner of work.

### 1. Sheerin Has Adduced Sufficient Evidence to Prove Constructive Notice

There is sufficient proof, albeit rather weak, that Tutor Perini had constructive notice of the grease spot. Plaintiff does not proffer evidence that Tutor Perini had actual notice of, or created, the slippery condition on the temporary bridge. To prove constructive notice, "a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident." *Irizarry*, 24 A.D.3d at 373, 806 N.Y.S.2d 534. Courts typically find constructive notice where a reasonable inspection would have uncovered the dangerous condition. *Dinunzio v. Ken-Jil Elec. Contractors, Inc.*, 473 F.Supp.2d 485, 487 (S.D.N.Y. 2007) (internal citations omitted). Here, Sheerin does not provide any evidence that the grease spot was "visible and apparent" to anyone, including himself, prior to the accident or that the grease spot existed "for a sufficient length of time prior to the accident." In fact, he testified that he never saw any grease on the temporary bridge surface until *after* his accident. Even drawing all reasonable inferences in his favor, the earliest report he made to anyone about grease on the temporary bridge structure occurred *after* the accident. Nonetheless, the Tutor Perini project manager for the temporary bridge project, Berkowitz, does testify that he routinely attempted to inspect the area for hazardous conditions, that he would not report trash or debris left behind by a worker, that he would not typically report things like the black "splash" or "spot" depicted in Sheerin's photographs, and would generally exercise his discretion to report potential hazards depending on the nature of that hazard. Drawing all reasonable inferences in Sheerin's favor, a jury could find that Tutor Perini, through Berkowitz, had constructive notice of the slippery condition on the temporary bridge surface.

### 2. Sheerin Has Not Adduced Sufficient Evidence to Prove Supervisory Control

There is no evidence that Tutor Perini supervised or controlled the manner of Sheerin's work. Plaintiff provides no theory, in the Complaint or in his opposition brief, explaining how this case constitutes a "manner and methods" case. He relies entirely on Berkowitz's testimony that he would try to walk the temporary bridge each day to search for dangerous conditions to prove this point. But this evidence is insufficient to establish *supervisory control*. Here, there is no proof that Tutor Perini owned and operated the temporary bridge surface or furnished the trucks, tools (including grease inserts, grease guns, or the like), and materials at the temporary bridge worksite. During his deposition, Sheerin admitted that Valentino exclusively directed his work orders both generally and on the date of the accident, and that Imperial was responsible for hiring the safety consultant to develop a workplace safety plan for the temporary bridge project. Even though Berkowitz, as project manager for Tutor Perini, occasionally visited the temporary bridge to search for hazardous conditions, this is insufficient because it shows, at best, "mere general supervisory authority at a worksite for the purpose of overseeing the progress of the work and inspecting the work product." *Ortega v. Puccia*, 57 A.D.3d 54, 866 N.Y.S.2d 323, 329 (2d Dep't 2008). Even after his fall, Plaintiff testified that he reported the accident to Valentino and Ascenzo—neither of whom are Tutor Perini employees. The record evidence points toward the fact that this is not a "manner" case and, even if it were, that Tutor Perini did not exercise supervisory control over the performance of Sheerin's work.

In sum, Tutor Perini's motion for summary judgment on Sheerin's claims under N.Y. Labor Law § 241(6) and § 200 is denied.

### C. Tutor Perini Is Entitled to Summary Judgment for Indemnification of Defense Costs, But Triable Issues Remain as to Indemnification for Liability

Summary judgment should be granted on the portion of the claim for contractual indemnification seeking defense costs in connection with the underlying lawsuit in favor of Tutor Perini. However, it is denied as to contractual indemnification coverage for liability.

"Generally, claims involving indemnification obligations are not justiciable until liability has been imposed upon the party to be indemnified." *U.S. Underwriters Ins. Co. v. Orion Plumbing & Heating Corp.*, 321 F.Supp.3d 313, 318 (E.D.N.Y. Mar. 1, 2018) (citing *FSP, Inc. v. Societe Generale*, No. 02-CV-4786 (GBD), 2003 WL 124515, at *4 (S.D.N.Y. Jan. 14, 2003), *aff'd and remanded*, 350 F.3d 27 (2d Cir. 2003), and *adhered to on reconsideration*, No. 02-CV-4786 (GBD), 2005 WL 475986 (S.D.N.Y. Feb. 28, 2005)). "Under New York law, the right to contractual indemnification depends upon the specific language of the contract." *Pilkington v. Tutor Perini Bldg. Corp.*, No. 17-CV-00060 (DF), 2020 WL 1285542, at *11 (S.D.N.Y. Mar. 18, 2020) (quoting *In re Bridge Const. Servs. of Fla., Inc.,* 140 F.Supp.3d 324, 331 (S.D.N.Y. 2015) (alteration and citation omitted)). In New York, "[t]he right to contractual indemnification depends upon the specific language of the contract. In the absence of a legal duty to indemnify, a contractual indemnification provision must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed." *Alfaro v. 65 W. 13th Acquisition, LLC*, 74 A.D.3d 1255, 904 N.Y.S.2d 205, 207 (2010) (citations omitted).

### 1. Defense Costs

Under Section 11.3, Imperial has expressly and clearly agreed to defend Tutor Perini "when a claim is made even if [Imperial] disputes its obligation to defend, indemnify and hold harmless." It further stipulates that Imperial "agrees to pay all defense costs so incurred by [Tutor Perini] or other indemnitee(s) upon demand." As U.S. District Judge John G. Koetl

articulated in *In re Bridge*, 140 F.Supp. at 334-35, regarding a substantially similar, if not the

same, indemnity provision in another case involving Tutor Perini:

> Here, the plain text of Section 11.3 unambiguously establishes a duty to defend that
> does not turn on whether [Imperial] was actually negligent. Section 11.3 does not
> predicate [Imperial]'s duty to defend on [its] negligence or even mention the
> determination of fault as a pertinent consideration. A fair reading of Section 11.3
> makes it plain that [Imperial]'s duty to defend commences when a claim is made
> against Tutor Perini arising out of the acts or omissions of [Imperial], "even if
> [Imperial] disputes its obligation to defend, indemnify and hold harmless."
> Subcontract Agreement § 11.3 (collecting cases holding a duty to defend where the
> express terms of the indemnification clause did not limit coverage based on certain
> conditions, such as a finding of fault or negligence).
>
> Indeed, the structure of § 11.3 makes clear that [Imperial]'s obligation to defend
> Tutor Perini commences when a claim is made against Tutor Perini, even if
> Imperial disputes its obligation to defend or indemnify Tutor Perini for that claim.
> If [Imperial] fails to defend Tutor Perini, Tutor Perini may defend the claim, but
> [Imperial] agrees to pay all defense costs. The obligation to pay the defense costs
> does not depend on an ultimate finding of fault by [Imperial], and the decision
> whether to provide a defense is necessarily made before any finding of fault has
> been made.

*In re Bridge*, 140 F.Supp. at 335. His interpretation of Section 11 is both sound and persuasive.

"A contract that provides for indemnification will be enforced as long as the intent to assume

such a role is sufficiently clear and unambiguous." *Bradley v. Early B. Feiden, Inc.*, 8 N.Y.3d

265, 832, N.Y.S.2d 470 (2007). Tutor Perini's motion for summary judgment seeking contractual

indemnification for defense costs incurred due to the underlying litigation is granted. Imperial's

motion for summary judgment on this portion of the contractual indemnification claim is denied.

## 2. Liability

The plain and unambiguous language of Section 11.1 of the Subcontractor Agreement

provides that Imperial "shall indemnify, defend and hold harmless Contractor [Tutor Perini] . . .

from and against all liability, claims . . . caused by, arising out of or resulting from the

performance of the Work or the acts or omissions of the Subcontractor [Imperial] . . . provided

20

that any such liability, claim . . . in whole or in part, by the negligent act or omission of the

Subcontractor . . . is connected to, or results from the Subcontractor's work." Furthermore, it

expressly excludes indemnification for Tutor Perini's *own* negligence. Because the section

241(6) claim survives summary judgment and remains in dispute, such claim would be covered

by the indemnity provision. That said, "[w]hether this contractual right of indemnification will in

fact be triggered cannot be resolved on this motion for summary judgment because it depends on

disputed issues of fact concerning whether [Imperial] was negligent and whether that negligence

was the proximate cause of the accident." *In re Bridge*, 140 F.Supp.3d at 332. Accordingly, both

Tutor Perini's and Imperial's motions for summary judgment on the contractual indemnification

claim are denied with respect to indemnification for damages or losses stemming from the

underlying action.

### D. Triable Issues Remain as to Whether Imperial Failed to Procure Insurance under the Subcontractor Agreement

A party asserting a claim for breach of contract under New York law must prove the

following elements: "(i) the formation of a contract between the parties; (ii) performance by the

plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Orlander v. Staples, Inc.*, 802

F.3d 289, 294 (2d Cir. 2015) (internal citation and quotation marks omitted). Breach of an

agreement to procure liability insurance imposes liability for the resulting damages. *Kinney v.*

*G.W. Lisk Co.*, 76 N.Y.2d 215, 219, 556 N.E.2d 1090 (1990) (citations omitted).

Tutor Perini asserts that Imperial breached the insurance procurement provisions of the

Subcontractor Agreement by failing to obtain a primary, noncontributory insurance policy of at

least $7 million naming Tutor Perini as an additional insured. They further allege that Imperial

never provided a proper certificate of insurance ("COI"). Imperial responds that they did not fail

to perform because they obtained a policy in good faith, submitted the COI to Tutor Perini, and

Tutor Perini still allowed them to work on the temporary bridge project. Tutor Perini and Imperial dispute whether the COI is sufficient to satisfy the terms of the insurance procurement provisions. Because there is sufficient ambiguity in the contract terms and related extrinsic evidence, the Court concludes that a reasonable jury could find for either Tutor Perini or Imperial on this issue. Both motions for summary judgment on the claim for failure to procure insurance are denied.

## VI. CONCLUSION

For the foregoing reasons, Imperial's motion for summary judgment is **DENIED**. However, Tutor Perini's motion for summary judgment is **DENIED IN PART** and **GRANTED IN PART**. In accordance with the Court's Individual Practices 4(A) and upon the Memo Endorsement dated September 14, 2021 (ECF No. 101), all Parties shall file a joint pretrial order within 30 days of the date this Opinion and Order is issued.

**SO ORDERED.**

**Dated:** **March 31, 2022**

**New York, New York**                          **ANDREW L. CARTER, JR.**
                                                **United States District Judge**